PITTSBURGH, CINCINNATI, CHICAGO AND ST. LOUIS RAILROAD COMPANY *v.* KEITH.

[No. 11,988. Filed March 11, 1925. Rehearing denied July 2, 1925. Transfer denied April 25, 1929.]

234

*John Rynerson, E. L. Branigin* and *George W. Long,* for appellant.

*Staff & Staff* and *Henry E. White, for appellee.*

McMAHAN, J.—Appellee recovered a judgment against appellant for $100 on account of a personal injury received August 11, 1920, and alleged to have been caused through the negligence of appellant. The injury arose

out of and in the course of appellee's employment by the Allen A. Wilkinson Lumber Company. On September 13, 1920, appellee and his employer agreed that appellee was entitled to compensation for a named period, and amounting to $20.76 and that his medical and surgical expenses during the first thirty days after the injury were to be paid by the employer. On September 16, 1920, this agreement was filed with and approved by the Industrial Board. On September 13, 1920, appellee received from his employer a check for $20.76, signed by his employer's insurance carrier. When he received this check, he signed a receipt stating that it was received in settlement and satisfaction of all claims for compensation on account of said injury. Prior thereto, viz., on August 26, 1920, appellee consulted with an attorney for the purpose of collecting his claim against appellant for damages, and, on that day, his attorney wrote a letter to appellant demanding settlement of the claim.

Appellant contends that appellee, having collected compensation from his employer, cannot maintain this action for damages. Appellee contends that the circumstances under which he received the money from his employer were such as do not bar him from prosecuting this action.

Appellant complains of the action of the court in overruling its demurrer to the several paragraphs of reply, but since the same questions are presented by the specifications in the motion for a new trial, we proceed to a consideration of the action of the court in overruling that motion. The specifications in that motion are that the verdict is not sustained by sufficient evidence, that the verdict is contrary to law and that the court erred in giving certain instructions.

In addition to the facts hereinbefore stated, there is ample evidence to prove the following facts: On September 22, 1920, the lumber company, through its

insurance carrier, paid the medical and surgical expenses occasioned by reason of the injury to appellee, the amount so paid being $12. When appellee signed the compensation agreement and accepted the check for $20.76, he did so with the understanding and belief that it would not interfere with his suit against appellant; that, at that time, he stated to Mr. Carter, the manager of the lumber company, that, if it interfered with such suit, he did not want it; that Mr. Carter at that time said that it did not satisfy the claim for damages against the railroad; that appellee at that time told Mr. Carter if he wanted to give him the money as a gift on his wages it would be all right, and that Mr. Carter said that was what he wanted to do and that appellee signed the agreement with that understanding. Neither appellee nor Mr. Carter knew whether such payment would or would not interfere with appellee's suit against the railroad.

Mr. Carter testified that when he gave appellee the check, he told appellee it released the lumber company from any other liability, and if he expected to get any more money he would have to go after the other parties; that on October 25, 1920, he and appellee had a talk about the latter paying back the $20.76, which he had received and that appellee said he had decided to return the money; that appellee then gave him a check for that amount and asked him to send it to the insurance company, which Mr. Carter promised to do; that appellee at that time said his lawyer had advised him to return the money and that he was acting on the advice of his lawyer.

Appellee testified that he did not know anything about the compensation act when he received the $20.76 from the lumber company; that, prior thereto, he had talked with his lawyer about a suit against the railroad company and accepted the $20.76 with the understanding

and belief that it would not interfere with that suit; that Mr. Carter told him it was a gift; that he later learned the insurance carrier had paid the doctor, after which he offered to pay the doctor and asked the doctor to return the money he had theretofore received from the insurance carrier; that the doctor did not accept the money from him, and that he has kept enough money in the bank to cover the check which he gave to the lumber company. The evidence also shows that the check so given by appellee has never been cashed. There is some evidence that appellee requested the lumber company to hold this check, although this is denied by appellee. There is no evidence that the lumber company made any objection to receiving the check from appellee, or that it has ever returned or offered to return it to appellee.

Section 13 of the Workmen's Compensation Act, Acts 1919 p. 158, §8020w Burns' Supp. 1921, reads as follows: "Whenever an injury or death, for which compensation is payable under this act, shall have been sustained under circumstances creating in some other person than the employer a legal liability to pay damages in respect thereto, the injured employee, or his dependents, in case of death, at his or their option, may claim compensation from the employer or proceed at law against such other person to recover damages, or may proceed against both the employer and such other person at the same time, but he or they shall not collect from both; and if compensation is awarded and accepted under this act, the employer, having paid compensation or having become liable therefor, may collect in his own name or in the name of the injured employee or, in the case of death, in the name of his dependents, from the other person in whom legal liability for damages exists, the compensation paid or payable to the injured employee or his dependents."

In passing upon the question of the rights of an injured employee as against an alleged negligent third person after such injured employee had collected compensation under the Workmen's Compensation Act, the Supreme Court, speaking by Judge Ewbank in *Pittsburgh, etc., R. Co.* v. *Parker* (1921), 191 Ind. 686, 132 N. E. 372, 134 N. E. 890, 19 A. L. R. 751, said: "The great weight of authority holds that under the provision, as recited, the injured employee 'shall not collect from both' the employer and a third person who caused his injury, and that an employer, 'having paid compensation or having become liable therefor, may collect . . . the indemnity paid,' an employee, who petitioned for the review of an award made in his favor, and procured it to be fixed at a definite amount, payable in weekly installments, and thereafter, for many months, accepted from his employer and receipted for the weekly payments as they became due, surrendered whatever right he might have had to recover at common law from a third person whose negligence caused his injuries, damages in excess of the compensation awarded him." And continuing on page 696, the court said: "The meaning of the statute seems too plain to admit of any possible construction other than that when the injured workman goes so far as to 'collect' from the employer under the Workmen's Compensation Law, he is forbidden also to recover an additional amount in an action at law against a third person whose negligence caused his injury."

On petition for rehearing, the court said: "The Indiana Statute expressly provides that the injured workman 'shall not collect from both.' (Acts 1919 p. 158, §13, *supra*.) Where the meaning of a statute is plain, the court must enforce it as it is written, and may not resort to an artificial construction to conform the law

to what has been enacted in other states in wholly different language."

Whether appellee collected compensation from his employer within the meaning of the compensation act was under the issues a question of fact. If he did, this cause must be reversed, otherwise affirmed.

In *Mingo* v. *Rhode Island Co.* (1918), 41 R. I. 423, 103 Atl. 965, the employee and employer entered into an agreement in accordance with the Workmen's Compensation Act, whereby the employer agreed to pay a certain sum for medical services and a named weekly compensation. This agreement was approved by the proper authority, and the amount so agreed on as compensation was paid, subject to an agreement between the employer and the employee that the latter should bring an action for damages against a third party whose negligence caused the injury, and that the employee should repay the employer all money received by him under the agreement out of the damages recovered from the third party. It was there held that the employee was not precluded from suing the negligent third party. The court, after a review of the English cases, in discussing a statute which provided that the employee shall not "receive both damages and compensation," said: "The employer is given the right of indemnity against the negligent third person, with the intention that the final payment for the damages suffered by the employee shall be made, not by the employer, but by the negligent third person who is responsible for the injury. The effect of the agreement in question is to accomplish this purpose of the statute and to aid the employer in securing the right of indemnity given to him by the statute. It is not the purpose of this statute to lessen or to change the liability of the negligent third person who is fully protected therein from a double liability, and in our opinion it was not the intention of the legislature to restrict the

right of the employee to make and act upon such an agreement as the one in question, and we do not think that the mere approval by the court of the agreement, procured by the initiative of either employee or employer, should be construed as a bar to the employee's right of action against the person responsible for the injury."

The evidence in the instant case very clearly, and without conflict, shows that, within two weeks after his injury, appellee consulted a lawyer relative to his claim against appellant for damages, and that the lawyer, within that time, wrote a letter to appellant making a claim for damages. About two weeks later, appellee's employer and appellee entered into an agreement concerning the right of appellee to compensation. This agreement was reduced to writing, at which time appellee received from his employer a check of the insurance carrier for the full amount of the compensation agreed on. A few days later, the agreement was filed with and approved by the Industrial Board, and, a short time thereafter, the insurance carrier paid the doctor in full for the services rendered appellee on account of the injury. At the time appellee signed the agreement, and accepted the amount named therein, there was no agreement or understanding that the employer or its insurance carrier was to be reimbursed by appellee out of any damages he might recover from appellant.

Ordinarily, when an employer pays an injured employee the amount due under a compensation agreement which has been approved by the Industrial Board, the employee cannot prosecute an action against a third person for damages, but the employer may maintain an action against the wrongdoer to recover the amount he was required to pay the injured employee.

We have no doubt but that an employer may make a gift to an injured employee of the amount which he

might be entitled to as compensation under the act, and that the employee may accept such gift without in any wise affecting his right to maintain an action against some other person whose negligence caused the injury. Of course, appellee and his employer had a right to enter into an agreement concerning compensation, and to have the same approved by the Industrial Board without affecting appellee's right to sue for and collect damages from appellant.

In *Kelly* v. *North British Ry. Co.* (1915), 53 Scot. L. R. 53, a workman was injured through the negligence of the railway company. He received compensation from his employer under an agreement in writing that the receipt of compensation should be without prejudice, and with the understanding that he intended to take action against the railway company, and, if he recovered damages from the railway company, he should repay whatever compensation had been paid him. The court followed *Wright* v. *Lindsay* (1911), 49 Scot. L. R. 210, decided in 1911, where a similar agreement, partly in writing and partly oral, was held not to bar an action against the wrongdoer. It was held in each of these cases that the payments were made for the purpose of enabling the workman to tide over the time that must elapse before the action against the wrongdoer could be disposed of, and were not intended to be made by virtue of the compensation act.

In *Aldin* v. *Stewart* (1915), 53 Scot. L. R. 49, where the workman accepted payment under circumstances showing that he was aware the payments were being made under the Workmen's Compensation Act, he was denied the right to maintain an action for damages. The first receipt in that case stated that the money was received as compensation for the accident, while later receipts made no reference to compensation, the words

"without prejudice" being added. The workman there was a minor and testified that he did not know he had an option of claiming compensation or prosecuting an action against the wrongdoer for damages. Under the facts, it was held the workman had recovered compensation and could not maintain the action for damages.

Under the Workmen's Compensation Act of England, the workman could take proceedings both against a third person to recover damages and against his employer for compensation, but could not recover both damages and compensation. He had to elect before there was a recovery. Under our act, the workman may prosecute his action for damages to judgment, and he may also have his claim for compensation allowed, but he is prohibited from collecting both from the wrongdoer and from the employer. He must elect from which one he will collect. If he collects compensation, he cannot collect damages.

It is clear that neither appellee nor his employer understood or intended that the receipt by appellee of the $20.76 should bar him from collecting damages from appellant. That matter was discussed at the time appellee accepted the check, which was before the agreement was approved by the Industrial Board. Appellee testified that the check was given to him as a gift. We do not overlook the fact that, at the time appellee received the check, he and his employer entered into an "agreement in regard to the compensation for the injury sustained" by appellee, and that there was attached to said check what was designated as a "compensation receipt," which recited that appellee had received of his employer the sum of $20.76, in "settlement and satisfaction of all claims for compensation or damages . . . on account of injuries suffered" by appellee August 11, 1920, while in the services of the lumber company. While this is a plain and unequivocal

acknowledgment of a payment of compensation, and, in the absence of fraud or mistake, should be final and conclusive, the receipt is not contractual, in the sense that the statement that the money was received for compensation cannot be contradicted by proof that the same was received as a gift. The jury found that the money was paid to appellee as a gift, with the agreement and understanding that it should not and would not interfere with or prevent appellee from prosecuting an action against appellant for damages, and the evidence is sufficient to sustain that finding. Such an agreement is not prohibited, and appellant, under the circumstances, cannot object to the parties making the same.

It is not the purpose of the statute to protect a negligent third party by relieving him from any part of his liability. It does prevent the employee from collecting both compensation and damages. It gives an employer who has paid compensation, or who has become liable therefor, the right to collect such compensation from the negligent third person. The employee may, if he has not accepted compensation from his employer, sue the negligent third person, and recover judgment for all damages occasioned by the negligent acts of such third person. If the employee should recover a judgment in such action, he has the option of collecting the judgment or proceeding against his employer for compensation. If he has also been awarded compensation, he must then elect which he will accept. If he accepts the compensation, his employer may then proceed against the negligent third person under the provisions of said §13.

Under the pleadings and the evidence in the case at bar, the payment to appellee being a gift, there is no right of action by the lumber company or its insurance carrier for indemnity. If appellant had so desired, by proper proceedings, it could have brought the lumber company and its insurance carrier in and required

244

them to answer as to their interest. It would seem, however, that appellant is fully protected from the possibility of having to indemnify the employer or the insurance carrier. See *Employers', etc., Liability Assurance Co.* v. *Indianapolis, etc., Trac. Co.* (1924), 195 Ind. 91, 144 N. E. 615.

We hold that the verdict is sustained by the evidence and is not contrary to law. What we have said disposes of the questions concerning the overruling of the demurrer to the several paragraphs of reply and the refusal to give instructions.

Finding no reversible error, the judgment is affirmed.